DECLARATION OF SPECIAL AGENT JASON SIMONIAN

I, Jason Simonian, being duly deposed and sworn, state and attest as follows:

1. I am a Special Agent ("SA") with the United States Food and Drug Administration's Office of Criminal Investigation ("FDA-OCI"), and have been so employed since September of 1996. I was previously employed as a Special Agent of the United States Department of Labor for approximately eight years. As an FDA-OCI Special Agent, I primarily conduct investigations into suspected violations of the Federal Food, Drug, and Cosmetic Act. I have been trained by the FDA-OCI to be familiar with the various means and methods by which illegal drug traffickers obtain possess, transport, divert, and distribute controlled substances, including anabolic steroids. I have also received training from the FDA-OCI in the means and methods by which drug traffickers launder their drug trafficking proceeds so as to disguise the origin of said proceeds and make it appear as if those proceeds were obtained from legitimate and lawful source(s) of activity.

2. This Declaration is submitted in support of the Complaint for Forfeiture In Rem against the following: (a) one lot of six thousand one-hundred and fifty dollars ($6,150.00) in U.S. currency; (b) one lot of one-thousand seven hundred and fifteen dollars ($1,715); (c) one 50 inch Zenith plasma television, serial number 509RMWV046609; (d) one 32 inch Samsung plasma television, serial number AEHT3CLC402272A; (e) one 40 inch Sony plasma television set, serial number 8085472; (f) one 19 inch Insignia TV/DVD all-in-one, serial number DCOUEOEO800D77752500; (g) one 15 inch Sharp LCD TV, serial number 50484205, all of which were seized on January 29, 2008 pursuant to the execution of a federal search warrant at [redacted] Providence, Rhode Island, the second floor of which is the residence of Anthony Robinson.

3. Since August 2007, I – along with other FDA-OCI agents, FDA-OCI Task Force agents, agents of the United States Drug Enforcement Administration ("DEA"), and agents from the Internal Revenue Service-Criminal Investigation ("IRS-CI") – have been involved in the investigation of Anthony Robinson ("Robinson") and others for the illegal distribution of pharmaceutical drugs, health care fraud, and money laundering. (See the Affidavit of OCI Special Agent Donald Henrique dated January 28, 2008, which is attached and incorporated herein).

4. On January 29, 2008, based upon the results of the investigation referred to above, a federal search warrant was executed at [redacted], Providence, Rhode Island. Included in the search warrant was the second floor apartment of Robinson. Approximately fifteen minutes after entry into Robinson's apartment, OCI SA Jason Giannelli read Robinson his Miranda warnings and asked Robinson if he understood these rights to which Robinson replied, "Yes." Robinson advised that he was willing to answer questions from law enforcement. SA Giannelli and OCI SA Donald Henrique subsequently interviewed Robinson and advised me of the information contained in paragraphs 5 through 8 below.

5. Robinson reported that he works at Harmony's Restaurant on Chalkstone Avenue in Providence, Rhode Island for his sister, Sheila Robinson. Robinson reported that he makes $208 per week as a cook at the restaurant. Later that day Robinson reported that he makes additional money buying and selling cars but does not pay income taxes on that money. Robinson could not provide any independent corroboration of the income he obtains from these car transactions.

6. Robinson reported that he (Robinson) provides cocaine to Carol Dipina (an individual who resides in the lower level of [redacted]) in exchange for prescription drugs. Robinson reported that he supplies Dipina approximately thirty-one grams of cocaine per week. Based on information supplied to me by agents of the DEA,

the street value of 31 grams of crack cocaine is approximately $1,200.00. Robinson reported that he (Robinson) sells the prescription pills obtained from Dipina to steady customers on "the street." I have obtained and analyzed records showing prescriptions for oxycontin, hydrocodone, and various prescription drugs that were issued to Robinson. Based on my training and experience, I know that the street value of one 80 mg pill of oxycontin can be as high as eighty (80) dollars and that the street value of one pill of hydrocodone is approximately five (5) dollars.

7. Initially Robinson reported that he (Robinson) purchases the cocaine in the form of crack-cocaine. Later Robinson withdrew this statement and admitted to purchasing the cocaine in powder form and cooking the powder cocaine into crack in his (Robinson's) apartment. Robinson also admitted that he distributed crack cocaine to individuals other than DiPina.

8. At one point during the questioning Robinson asked why agents were removing a television from his room. Robinson was informed that the various "high-end" televisions in the apartment were being seized and that agents believed the televisions were purchased with the proceeds of illicit drug sales. Robinson initially stated that he (Robinson) paid for his televisions with money earned from his employment at Harmony's. Upon further questioning, Robinson subsequently admitted that his principle source of income was from illicit drug sales and that the televisions in his house were likely bought using the proceeds of illicit drug sales. Robinson also admitted that the cash seized (both lots of currency referenced in paragraph 2, items (a)-(b), above) from his apartment was also likely the proceeds of illicit drug sales.

9. At Robinson's residence, [redacted] Providence, Rhode Island, I conducted a physical search of Robinson's bedroom. While conducting that search, I located a quantity of suspected marijuana inside a pillow on Robinson's bed. The marijuana was packaged into separate quantities in small plastic bags. Along with the

marijuana was a wad of U.S. Currency held together with a plastic band. The currency was subsequently counted and found to total $1,715.00.

10. In the bedroom, a search of the top drawer of the night table directly next to Robinson's bed revealed a quantity of suspected cocaine hidden inside a white sock. There were several shrink-wrapped bundled of cocaine in a plastic bag, which in turn was in the sock. Directly next to pair of socks was a wallet. The wallet, which contained various forms of identification for Robinson, was found to contain $6,150.00 in U.S. Currency. Both the suspected marijuana and cocaine was subsequently field tested with positive results.

11. Based on the results of the search, Robinson was arrested and charged in a State of Rhode Island Criminal Complaint with manufacture of a controlled substance and possession with intent to deliver controlled substances.

12. On February 22, 2008, Anthony Robinson appeared before Magistrate Judge Susan L. Evans in Rhode Island's Six District Court. At that time, Robinson pleaded *nolo contendere* to violating the terms of his probation, which resulted from a 2005 conviction for the possession with intent to distribute a controlled substance in violation of Rhode Island Controlled Substance Act, Section 21-28-4.01-A2A. Judge Revens ordered that Robinson be incarcerated for a period of eighteen (18) months with an additional period of fifty (50) months suspended.

13. Based upon the foregoing, there is probable cause to believe that, the two lots of currency – the lot of six thousand one-hundred and fifty dollars ($6,150.00) and the lot of one-thousand seven hundred and fifteen dollars ($1,715), both of which are respectively described in paragraph 2 at (a) and (b), and both of which were seized from [redacted], Providence, Rhode Island on January 29, 2008 – were furnished and intended to be furnished in exchange for controlled substances, specifically cocaine and marijuana; constitutes the proceeds of the exchange or sale of controlled substances;

and are, therefore, subject to seizure and forfeiture pursuant to Title 21 U.S.C. § 881(a)(6). Additionally, the items described at paragraph 2, items (c) - (g) – all of which were seized from [redacted] Providence, Rhode Island on January 29, 2008 – were purchased with the proceeds of the sale of controlled substances and are, therefore, subject to seizure and forfeiture pursuant to 18 U.S.C. § 981(a)(1)(C).

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Jason A. Simonian
Jason A. Simonian
Special Agent
Food and Drug Administration
Office of Criminal Investigation